

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

RONALD E. BURT, SR. (#N-60788)      )
                                     )
        Plaintiff,                   )
                                     )
    v.                               )      No. 07 C 4284
                                     )
ROBERT E. WALKER, et al.,            )
                                     )
        Defendants.                  )

## MEMORANDUM OPINION AND ORDER

The plaintiff, a state prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The plaintiff claims that the defendants, officials at the Stateville Correctional Center, violated the plaintiff's constitutional rights by giving him an unfairly high security classification, by confiscating or stealing his personal property, by threatening and harassing him on account of his former gang affiliation, by interfering with his access to the courts, and by acting with deliberate indifference to his safety (denying him placement in protective custody, allowing rival gang members to menace him, and permitting inmate workers to adulterate his food). This matter is before the court for ruling on the defendants' motions to dismiss the amended complaint for failure to state a claim. For the reasons stated in this order, the motions are granted.

It is well established that *pro se* complaints are to be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000). They can be dismissed for failure to state a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines*, 404 U.S. at 521; *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000). Fact pleading is not necessary to state a claim for relief. *Thompson v. Washington*, 362 F.3d 969, 970-71 (7th

Cir. 2004). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to " 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly*, 550 U.S. ----, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, (1957)). To satisfy the notice pleading requirements of Fed. R. Civ. P. 8(a)(2), the plaintiff need only state his legal claim and provide "some indication . . . of time and place." *Thompson*, 362 F.3d at 971. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp.*, 127 S.Ct. at 1964 -65 (citations omitted).

In addition, when considering whether to dismiss a complaint for failure to state a claim upon which relief can be granted, the court takes the allegations in the complaint as true, viewing all facts–as well as any inferences reasonably drawn therefrom–in the light most favorable to the plaintiff. *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000); *Bell Atlantic Corp.*, 127 S.Ct. at 1955 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, n. 1, (2002). Dismissal should be denied whenever it appears that a basis for federal jurisdiction in fact exists or may exist and can be stated by the plaintiff. *Norfleet v. Vale*, No. 05 C 0926, 2005 WL 3299375, at *1 (N.D. Ill. Dec. 5, 2005) (Zagel, J.). A well-pleaded complaint may proceed even if it appears "that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Bell Atlantic Corp.*, 127 S.Ct. at 1965. Nevertheless, the factual allegations in the complaint must be enough to raise a right to relief above the speculative level. *Id.*, 127 S.Ct. at 1973-74 & n.14. Furthermore, a plaintiff can plead himself or herself out of court by pleading facts that undermine the allegations set forth in the complaint. *See, e.g., Kolupa v. Roselle Park*

2

*Dist.*, 438 F.3d 713, 715 (7th Cir. 2006). The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits. *Weiler v. Household Finance Corp.*, 101 F.3d 519, 524 n. 1 (7th Cir. 1996) (citations omitted).

## FACTS

The plaintiff is a state prisoner, in the custody of the Illinois Department of Corrections. The plaintiff was housed at the Stateville Correctional Center at all times relevant to this action. Defendant Terry McCann was Stateville's warden at the time of the events giving rise to this lawsuit. Defendants Darryl Edwards and Othello Hamilton are Internal Affairs officers at the prison. Defendants Liliuokalani Streator and Diana Solis are Stateville correctional officers. Defendant Glen Elborsen is the head of security at Stateville. Defendant Mary Purvin is a registered nurse, employed in the facility's health care unit. Defendant Sherry Benton is the chairperson of the Illinois Administrative Review Board.

The plaintiff alleges the following facts, which will be accepted as true for purposes of the motions to dismiss: In January 2007, the plaintiff was placed in the Stateville Correctional Center. The plaintiff was incorrectly, he believes, classified as a "level-E" (i.e., high escape risk) inmate.

In early February 2007, the plaintiff asked defendant Elborsen why he had been given such a high security classification. Elborsen explained that the Attorney General's Office had requested the classification because the victim in the plaintiff's criminal case was the business partner of the wife of the Winnebago County State's Attorney. Elborsen laughed when he revealed the reason to the plaintiff.

On or about February 2, 2007, the plaintiff began experiencing conflicts with the Latin Folks gang. The plaintiff reported the tension to the Internal Affairs division. Elborsen responded to the plaintiff's letter, taking him to a holding room and demanding names, identification

3

numbers, and cell numbers of the inmates who were threatening the plaintiff. Elborsen admonished the plaintiff that he would get no help unless he provided information.

On February 3, 2007, defendant Hamilton interviewed the plaintiff. The plaintiff told Hamilton that he was a retired member of the Latin King gang. Hamilton made the plaintiff sign a blank form, from which prison officials fabricated a document attributed to the plaintiff purporting to inform on fellow Latin King members.

On February 4, 2007, defendant Elborsen met with the plaintiff a second time. Elborsen insisted that he knew the plaintiff was an active Latin King; he promised that the plaintiff would regret it if he did not help Elborsen "take down" the Latin Kings. Elborsen pledged, in the alternative, that the plaintiff would be transferred to a medium security facility and enjoy a lower security status if he cooperated with prison authorities.

On or about February 5, 2007, defendants Streator and Solis made remarks about the plaintiff being a white supremist and uttered veiled threats as they passed his cell. The plaintiff overheard the officers offering to pay inmates to persuade defendant Purvin, a Stateville nurse, to place false documents in the plaintiff's medical file. Defendant Purvin appeared about an hour later, promising to do as the officers asked.

On February 6, 2007, defendant Edwards and another officer read aloud the plaintiff's fake "snitch kite" regarding Latin Kings and Latin Folks to the whole gallery. The plaintiff reckons that the officers were hoping to turn gang members against the plaintiff and do him serious harm. Edwards assured the plaintiff that he would be placed in protective custody; however, he never followed through on that promise.

4

The same day, when the plaintiff returned to his cell following an appointment in the health care unit, he found that all of his personal property was either stolen or destroyed. The plaintiff suspects that officers unlocked his cell to allow other inmates access.

While in "F-House," the plaintiff was unable to eat because unnamed staff members permitted other inmates to put feces, semen, and pubic hairs in the plaintiff's food. The staff also had to stop "security threat groups" from opening the plaintiff's cell door and attacking him.

About two or three weeks later, the plaintiff was moved to another cell. The plaintiff applied for placement in protective custody and was told that he would remain in "X-House" until a final determination was made.

On March 13, 2007, the plaintiff had a hearing before the Administrative Review Board in connection with his request for placement in protective custody. Defendant Benton denied the request on March 20, 2007. The plaintiff was accordingly sent back to F-House. In her denial, Benton referred to the plaintiff as a white supremist.

The plaintiff spent an unspecified week in the health care unit, for an undisclosed reason. While the plaintiff was in the health care unit, a Sergeant Kerl (who is not named as a defendant) confiscated transcripts from the plaintiff's cell relating to his criminal appeal. The transcripts were subsequently lost or destroyed.

## DISCUSSION

Even accepting the plaintiff's factual allegations as true, the court finds that the amended complaint fails to state an actionable claim as a matter of law. The plaintiff's allegations either implicate no constitutional right or do not state a cause of action against the named defendants.

5

## A. Motion to Dismiss Filed by Mary Purvin

The plaintiff has no viable federal cause of action against defendant Mary Purvin. The plaintiff's only allegation against "RN Mary" is that she agreed to place some kind of a false document in the plaintiff's medical file. The plaintiff does not allege that she actually ever did so, or how any such false document may have injured him. In fact, the plaintiff has not responded to Purvin's motion to dismiss.

In order to be liable under 42 U.S.C. § 1983, a defendant must have both (a) acted under color of state law and (b) violated a constitutional right. *Burrell v. City of Mattoon*, 378 F.3d 642, 647 (7th Cir. 2004). In this case, even assuming that Purvin carried out the request to falsify the plaintiff's medical records, the matter implicates no constitutional right.

Even in constitutional torts, there is no tort without injury. *Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1202 (7th Cir. 1997); *Niehus v. Liberio*, 973 F.2d 526, 532 (7th Cir. 1992) (collecting cases). " 'No harm, no foul' is a maxim of the law of torts (in legal rather than sports lingo: there is no tort without injury). This maxim is equally apt in administering the apparatus for seeking compensation after a tort." *Kanar v. U.S.*, 118 F.3d 527, 531 (7th Cir. 1997). Furthermore, as Purvin points out, an inmate generally cannot recover compensatory damages without physical injury. Title 42, United States Code, Section 1997e(e) provides that "[n]o Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e); *see also Zehner v. Trigg*, 133 F.3d 459, 462-63 (7th Cir. 1997) (upholding as constitutional the PLRA limitation that forbids recovery for mental or emotional damages without a prior showing of physical injury).

In short, if Purvin falsified the plaintiff's medical records, she may be subject to professional discipline. However, in the absence of any showing that Purvin acted with deliberate

6

indifference to a serious medical need or otherwise violated a constitutional right, the plaintiff cannot recover damages for the insertion of an unknown document in his medical file. Defendant Purvin's uncontested motion to dismiss the amended complaint for failure to state a federal claim against her is accordingly granted. The plaintiff's claim against Purvin is dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## B. Defendants Streator and Solis

For essentially the same reasons, the amended complaint is dismissed as to defendants Solis and Streator. Even if those officers persuaded defendant Purvin to falsify the plaintiff's medical records, as the plaintiff alleges, there is no evidence of any actual injury to the plaintiff.

The plaintiff additionally alleges that Solis and Streator once made threatening comments while passing the plaintiff's cell one day. However, verbal harassment, while inexcusable and unprofessional, does not rise to the level of a constitutional violation. *See DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000). "Mere words or threats, however violent, do not amount to an actionable assault under § 1983." *Bennett v. Sheahan*, No. 99 C 2270, 1999 WL 967534, *4 (N.D. Ill. 1999) (Holderman, J.) (citations omitted). Consequently, as neither Solis nor Streator carried out their threats, they are dismissed as defendants.

## C. Plaintiff's Security Classification

The plaintiff has no cause of action under 42 U.S.C. § 1983 with respect to his security classification. The plaintiff's heightened security status, with its concomitant restrictions, did not violate his constitutional rights. It is well-settled that prison inmates do not have a protected interest in a particular security classification. *See Sandin v. Conner*, 515 U.S. 472, 486 (1995) (in the prison context, liberty interests are limited to freedom from restrictions that are "atypical and significant in relation to the ordinary incidents of prison life"). The Court of Appeals for this

7

circuit has repeatedly held that being placed in disciplinary or administrative segregation "is too trivial an incremental deprivation of a convicted prisoner's liberty to trigger the duty of due process." *Holly v. Woolfolk*, 415 F.3d 678, 679 (7th Cir. 2005); *see also Paige v. Hudson*, 341 F.3d 642, 643 (7th Cir. 2003); *Montgomery v. Anderson*, 262 F.3d 641, 643 (7th Cir. 2001). An inmate has no liberty interest in remaining in the general prison population. *Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir. 1995). A high-risk security classification is even less onerous a burden than segregation.

Furthermore, the plaintiff's designation as an escape risk appears to be justified. The court takes judicial notice from the Illinois Department of Corrections website that the plaintiff's criminal history includes what amounted to an escape: the site reflects a conviction under Winnebago County criminal case number 90 CF 1782 for "felon fail/return frm furlough." A second conviction, for possession of contraband in a penal institution, *see* Livingston County Circuit Court Case No. 94 CF 195, likewise suggests that the plaintiff posed a heightened security risk. Moreover, the fact that the plaintiff is serving four life sentences for murder (in addition to lesser sentences on multiple counts of armed robbery and aggravated battery) might give him additional incentive to attempt another escape, as he has little to lose but privileges.

Elborsen's purported comments about the identity of the plaintiff's victim playing a role in his security classification strike the court as hot air and are largely irrelevant. But even if the identity of the plaintiff's victim was a factor in determining his classification, it is not a constitutionally impermissible consideration. Right or wrong, prison officials obviously believed that the plaintiff was an active Latin King gang member with intimate knowledge of the organization, as evidenced by the pressure they allegedly exerted on him to inform on gang

8

members. But irrespective of whether Stateville officials were correct in assessing the plaintiff as a high-risk inmate, the matter does not implicate the Constitution.

## D. Deliberate Indifference to the Plaintiff's Safety

Because the plaintiff has articulated no injury, his claim that defendants Hamilton, Elborsen, Edwards and Benton acted with deliberate indifference to his safety must be dismissed.

The Constitution "imposes upon prison officials the duty to take reasonable measures to guarantee the safety of the inmates." *Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005), *citing Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal citations omitted). The obligation to protect encompasses a duty "to protect prisoners from violence at the hands of other prisoners." *Brown*, 398 F.3d at 909; *Farmer*, 511 U.S. at 834. To establish an Eighth Amendment claim that correctional officials acted with deliberate indifference to his safety, the plaintiff must show that: (1) he was "incarcerated under conditions posing a substantial risk of serious harm," and (2) the defendants acted with "deliberate indifference" to that risk. *Id.*

### 1. Subjective Prong

The plaintiff has stated facts showing a culpable state of mind on the part of defendants Hamilton, Elborsen and Edwards. In order to satisfy the subjective prong, the plaintiff must show that the defendants acted with deliberate indifference to the substantial risk of serious harm. *Farmer*, 511 U.S. at 838; *Brown*, 398 F.3d at 913. A defendant "must both be aware of the facts from which an inference could be drawn that a substantial risk of harm exists, and he must also draw that inference." *Farmer*, 511 U.S. at 838; *Brown*, 398 F.3d at 913; *Riccardo*, 375 F.3d at 525. The subjective prong has two subparts: (a) knowledge of the risk, *Brown* at 913, and (b) a disregard of that risk. *Id.* at 916. Although this is a subjective test, it may be proven through circumstantial evidence. *Farmer*, 511 U.S. at 842 ("Whether a prison official had the requisite

9

knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.") (internal citation omitted). The relevant inquiry is whether correctional officials actually knew about the danger that the plaintiff faced, not whether a reasonable official should have known. *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999).

In this case, taking the facts in the light most favorable to the plaintiff, the amended complaint supports an inference that the defendants acted with deliberate indifference to a substantial risk of known harm--in fact, according to the plaintiff, the defendants intentionally exposed him to risk in order to coerce him into disclosing information about illegal gang activity at Stateville. The plaintiff reports that Hamilton, Elborsen and Streator falsely broadcast to other inmates in the plaintiff's housing unit that he was a "snitch"--a dangerous designation in the prison setting, especially when the subjects of the plaintiff's perceived tattling were members of violent street gangs. [On the other hand, although the defendants could not withhold protection as a means of forcing the plaintiff to cooperate with them about gang activity, it would certainly not be unreasonable to demand the identity of those the plaintiff claimed were threatening him before prison officials acted on his pleas that he was in danger.]

2. Objective Prong

The plaintiff could also arguably satisfy the objective prong. The objective prong requires a plaintiff to allege that he was "incarcerated under conditions posing a substantial risk of serious harm." *Brown*, 398 F.3d at 911. To satisfy this prong, a plaintiff must demonstrate not only that he or she experienced, or was exposed to, a serious harm, but also that there was a substantial risk beforehand that serious harm might actually occur. *Id.* "When [Seventh Circuit] cases speak of

10

a 'substantial risk' that makes a failure to take steps against it actionable under the Eighth or Fourteenth Amendment, they also have in mind risks attributable to detainees with known 'propensities' of violence toward a particular individual or class of individuals; to 'highly probable' attacks; and to particular detainees who pose a 'heightened risk of assault to the plaintiff.' " *Id.*, 398 F.3d at 911. This general definition of "substantial risk" includes, of course, "risks so great that they are almost certain to materialize if nothing is done." *Id.* In the case at bar, the plaintiff alleges that "security threat groups" had to be stopped from attacking him, and that they did manage to put foreign objects in his food. The plaintiff further alleges that other inmates seemed to have access to his cell.

Nevertheless, even in response to the defendants' motion to dismiss, the plaintiff has alleged no actual injury stemming from the enmity that Hamilton, Elborsen and Edwards allegedly attempted to engender. As discussed *supra*, an inmate cannot recover compensatory damages without physical injury. 42 U.S.C. § 1997e(e). There is no indication that gang enemies ever physically attacked the plaintiff; to the contrary, he specifically states in his amended complaint that authorities "stopped" gang members from entering his cell and harming him. (Amended Complaint, p. 11.) Furthermore, the plaintiff does not allege that he ever became sick from the meals in which he claims to have found disgusting foreign objects . Additionally, the plaintiff will not be able to prove that the named defendants cause were behind the food adulterations. If the defendants deliberately subjected the plaintiff to danger at the hands of fellow inmates, then their conduct was reprehensible; however, under the facts alleged, the plaintiff is not entitled to relief under 42 U.S.C. § 1983. The plaintiff cannot recover damages for injury that might have occurred but did not.

11

3. Denial of Placement in Protective Custody

The plaintiff cannot meet either the objective or subjective prong with regard to the denial of protective custody placement. The plaintiff has alleged no facts suggesting that defendant Benton was aware of any significant danger to the plaintiff; he asserts only that she denied his application and misidentified him as a white supremist. If defendants Hamilton, Elborsen and Edwards turned inmates against the plaintiff in F-House, a transfer to another cellhouse may have been appropriate; however, the plaintiff has stated no facts whatsoever to show that placement in protective custody was warranted, a request that would have undergone multiple levels of review before reaching the Administrative Review Board. Furthermore, the lack of any injury resulting from the denial of placement in protective custody again precludes any award of damages.

The plaintiff cannot obtain injunctive relief, either. If a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless he can demonstrate that he is likely to be transferred back to that facility and again be subject to the alleged illegality. *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) (internal citations and quotations omitted). The IDOC website shows that the plaintiff is currently incarcerated at the Menard Correctional Center.

Finally, the plaintiff cannot recover damages for Benton's alleged libel. "Defamation is not a deprivation of liberty within the meaning of the Due Process Clause. No more is a derogatory racial epithet." *Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987) (citations omitted); *see also Paul v. Davis*, 424 U.S. 693 (1976); *Dishnow v. School Dist.*, 77 F.3d 194, 199 (7th Cir. 1996). If the plaintiff wishes to sue Benton for defamation for calling him a white supremist, he must do so in state court. The plaintiff has no federal cause of action against Benton.

12

## E. Lost Property

The plaintiff cannot sue the defendants in federal court for the loss or theft of his belongings. First, the plaintiff has not alleged (and it seems doubtful that he could come up with any evidence to prove) that any of the named defendants were personally responsible for the loss or theft. Section 1983 creates a cause of action based on personal liability and predicated upon a fault; thus, "to be liable under § 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7ᵗʰ Cir. 2005) (citations omitted).

In any event, a random and unauthorized deprivation of property by a state employee does not constitute a due process violation if the State provides a meaningful post-deprivation remedy. *Belcher v. Norton*, 497 F.3d 742, 750 (7ᵗʰ Cir. 2007); *Snyder v. Nolen*, 380 F.3d 279, 298 (7th Cir. 2004). The Illinois Court of Claims provides the plaintiff with an adequate remedy to redress his property loss. The plaintiff may also file an action in the state circuit court for the tort of conversion. *See Cirrincione v. Johnson*, 703 N.E.2d 67, 70 (Ill. 1998). Because the State has provided an adequate post-deprivation remedy, the loss of the plaintiff's property is not actionable under 42 U.S.C. § 1983. *See Gable v. City of Chicago*, 296 F.3d 531, 540 (7ᵗʰ Cir. 2002). Though it is most unfortunate that the plaintiff lost his personal belongings, his lost property claim is therefore dismissed for failure to state a federal claim.

## E. Lost or Destroyed Legal Transcripts

None of the named defendants can be held liable for the seizure or destruction of the plaintiff's legal transcripts. The plaintiff alleges that a Sergeant Kerl, who is not a defendant, confiscated the transcripts and that about four months later, another guard (Officer Banks–again, not a defendant) informed the plaintiff that the transcripts had been "thrown away/destroyed or

lost." (Amended Complaint. p. 13.) The named defendants lack any apparent personal involvement.

Regardless, a plaintiff claiming denial of access to the courts must show "actual injury"–that is, that a state actor hindered the plaintiff's efforts to pursue a nonfrivolous legal claim. *Id.* at 351-52; *Harrell v. Cook*, 169 F.3d 428, 432 (7th Cir. 1999). Even under basic notice pleading, an inmate claiming a denial of access to the courts must specifically allege how the denial prejudiced him. *See, e.g., Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006); *Ortloff v. United States*, 335 F.3d 652, 656 (7th Cir. 2003). In this case, the plaintiff cannot meet his burden without showing that his criminal conviction has been reversed.

In *Hoard v. Reddy*, 175 F.3d 531 (7th Cir. 1999), an inmate sued correctional officials for violating his constitutional right of access to the courts, claiming that the defendants had hindered his efforts to litigate a post-conviction petition. The Court of Appeals affirmed the district court's dismissal of the lawsuit on the basis of *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), which bars suits for damages on any theory that implies the invalidity of a non-reversed conviction. The Court of Appeals held, "In a case such as *Heck*, where the prisoner is complaining about being hindered in his efforts to get his conviction set aside, the hindrance is of no consequence if the conviction was valid, and so he cannot get damages until the conviction is invalidated." *Hoard*, 175 F.3d at 534; *see also Nance v. Vieregge*, 147 F.3d 589 (7th Cir. 1998) ("[t]he holding of *Lewis* that a claim based on deprivation of access to the courts requires proof of concrete injury, combined with the holding of *Heck*, means that a prisoner . . . must have the judgment annulled before damages are available"). In short, the plaintiff would be able to establish that he is entitled to damages for the purported infringement of his access to the courts only if he were able to show that his conviction has been reversed.

14

## F. Stateville Warden Terry McCann

The amended complaint is entirely devoid of any reference to Warden Terry McCann. The mere fact that McCann was the warden at Stateville during the time period in question is insufficient to establish liability, as the doctrine of *respondeat superior* (blanket supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983. *See Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001). Section 1983 does not create collective or vicarious responsibility. *Id.* Supervisors cannot be held liable for the errors of their subordinates. *Birch v. Jones,* No. 02 C 2094, 2004 WL 2125416, at *6 (N.D. Ill. Sep. 22, 2004) (Manning, J.), *citing Pacelli v. DeVito,* 972 F.2d 871, 877 (7th Cir. 1992). "Supervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable." *Chavez v. Illinois State Police,* 251 F.3d 612, 651 (7th Cir. 2001) (citations omitted). To be held liable under 42 U.S.C. § 1983, supervisors "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference." *Id.* In short, some causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery. *Hildebrandt v. Illinois Dept. of Natural Resources,* 347 F.3d 1014, 1039 (7th Cir. 2003). Because the plaintiff has failed to state any facts suggesting that McCann was personally involved in–or even aware of–the alleged circumstances giving rise to this lawsuit, he is dismissed as a defendant in this matter.

## G. Individual vs. Official Capacity and Qualified Immunity

As the court finds that the plaintiff has failed to articulate a cognizable federal claim against any of the named defendants, the court need not address the parties' arguments concerning Eleventh Amendment and qualified immunity. Nevertheless, the court notes that the plaintiff's failure to specify whether the defendants were sued in their individual or official capacities does

15

not necessarily render this solely an official capacity suit. *See Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001). The plaintiff challenges alleged wrongs committed by individual IDOC officials, and makes no mention of an official policy or custom. The plaintiff also seeks punitive damages. In light of these factors and the plaintiff's *pro se* status, the court concludes that the plaintiff intended suit against the defendants in their individual capacities. *Ibid.*

Defense counsel is also advised that because an immunity defense usually depends on the facts of the case, dismissal at the pleading stage is inappropriate. *Jacobs v. City of Chicago*, 215 F.3d 758, 765 n. 3 (7th Cir. 2000). "Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground for dismissal. . . ." *Jacobs*, 215 F.3d at 775 (Easterbrook, J., concurring).

## CONCLUSION

For all of the foregoing reasons, the defendants' motions to dismiss are granted. The amended complaint is dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted in federal court.

The plaintiff is warned that if a prisoner has had a total of three federal cases or appeals dismissed as frivolous, malicious, or failing to state a claim, he may not file suit in federal court without prepaying the filing fee unless he is in imminent danger of serious physical injury. 28 U.S.C. § 1915(g).

If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455 appellate filing fee irrespective of the outcome of the appeal. *Evans v. Illinois Dept. of Corrections*, 150

16

F.3d 810, 812 (7th Cir. 1998). Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate another "strike."

IT IS THEREFORE ORDERED that defendant Purvin's motion to dismiss [#49] is granted.

IT IS FURTHER ORDERED that the remaining defendants' motion to dismiss [#51] is granted. The amended complaint is dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(6). The case is terminated.

Enter: _Wm. J. Hibbler_

WILLIAM J. HIBBLER
United States District Judge

Date: _7/14/08_

17